UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **PATRICIA DOWNS** | * | **CIVIL ACTION NO. 17-0888** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **UNITED OF OMAHA LIFE INSURANCE COMPANY, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss pursuant to Rule 12(b)(6) [doc. # 6] filed by defendants United of Omaha Life Insurance Company and Mutual of Omaha Insurance Company. The motion is opposed. For reasons assigned below, it is recommended that the motion to dismiss be granted-in-part and denied-in-part.

### Background

On July 10, 2017, plaintiff Patricia Downs filed the instant suit for breach of contract against United of Omaha Life Insurance Company and Mutual of Omaha Insurance Company (incorrectly sued as "Mutual of Omaha") (collectively "Omaha"). (Compl.). Downs alleged that she stopped working on April 9, 2012, because of a complete rotator cuff rupture and acute infective polyneuritis, a/k/a Guillain-Barre Syndrome. *Id.*, ¶ 3. She applied for long-term disability benefits with Omaha, who found her disabled from her prior occupation as a registered nurse and paid her benefits from July 9, 2012 through July 8, 2014. *Id.*, ¶¶ 3-4.[1]

---

[1] Plaintiff revised some of these dates in her brief. *See* doc. # 9.

Thereafter, plaintiff underwent arthroscopic repair of her left rotator cuff, decompression, claviculectomy, and bilateral carpal tunnel releases. *Id.*, ¶ 5. She has a history of right hip prosthesis and sigmoid colectomy. *Id*. She also continues to experience pain and suffering as a result of these impairments. *Id*.

Nonetheless, Omaha apparently determined that, despite her impairments, Downs retained the physical capacity and transferrable skills to make an adjustment to perform other work. *See* Compl., ¶ 6. Accordingly, Omaha determined that no further benefits were payable and declined her claim for continued payments as of July 10, 2014. *Id.*, ¶ 7.

Downs disagreed with that determination and requested mediation pursuant to the contract. *Id.*, ¶ 10. In a letter dated July 6, 2017, however, Omaha declined to mediate the matter. *Id.*, ¶ 10, Exh. A. The instant litigation ensued. Plaintiff's suit seeks an award for all reasonable sums due, punitive damages, attorney's fees, costs, and interest. *Id.*, ¶ 2, Prayer. She *additionally* requested attorney's fees under 42 U.S.C. § 1988, and asked for a jury trial. *Id.*, ¶¶ 9, 12.[2]

On October 17, 2017, Omaha filed the instant motion to dismiss for failure to state a claim upon relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Omaha argues that the long-term disability policy that forms the basis for plaintiff's breach of contract

---

[2] Plaintiff's complaint fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure which requires a short and plain statement of the grounds upon which the court's jurisdiction depends. Fed.R.Civ.P. 8(a). Albeit, on the civil cover sheet, she indicated that jurisdiction was premised on 28 U.S.C. § 1332, i.e., diversity of citizenship. However, she neither properly alleged the citizenship of defendants, nor asserted that the amount in controversy exceeded the jurisdictional minimum. While the court ordinarily would require plaintiff to redress these deficient jurisdictional allegations before reaching the merits of a Rule 12(b)(6) motion, resolution of the motion to dismiss in this case actually serves to supply the otherwise missing basis for the exercise of jurisdiction. *See* discussion, *infra*.

suit is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Therefore, it further argues that plaintiff's state law claim(s) is completely preempted by the comprehensive regulatory scheme, and subject to dismissal on that basis. In support of its motion, Omaha attached a copy of the disability policy that forms the basis for plaintiff's suit, and which is referenced in plaintiff's complaint. (M/Dismiss, Exh. A).[3] Omaha further contends that under ERISA, plaintiff is not entitled to punitive damages or a jury trial. Finally, Omaha contests the applicability of 42 U.S.C. § 1988 as a basis for attorney's fees in this non-civil rights case.

On November 7, 2017, plaintiff filed her response to the motion, in which she opposed dismissal of her case, but otherwise did not address Omaha's arguments. Plaintiff stated that if the motion asserted a valid defense, then she should be afforded the protections of a summary judgment motion.[4] Alternatively, she asked the court to remand the case to state court.[5]

Movant did not file a reply brief, and the time to do so has lapsed. *See* Notice of Motion Setting [doc. # 8]. Thus, the matter is ripe.

## Discussion

**I.      12(b)(6) Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state

---

[3] The disability plan adduced by Omaha is identified as Group Policy Number GLTD-AJ4Q, which is the same policy number referenced in Omaha's letter that plaintiff attached to her complaint. *Compare* M/Dismiss Exh. A and Compl., Exh. A.

[4] Plaintiff, however, did not identify what discovery she wished to conduct or the evidence that she intended to submit to the court.

[5] Remand is not available in this case because the matter was not removed from state court.

a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)); *see also* Fed.R.Civ.P. 8(a)(2). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010). A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil

Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958). The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert, supra*.[6] Even if a plaintiff fails to oppose a 12(b)(6) motion, the court still is obliged to assess the legal sufficiency of the complaint. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (citations omitted).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, as here, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

---

[6] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

**II.     ERISA Preemption**

There are two distinct types of preemption under ERISA: complete preemption under § 502(a) (the civil enforcement provision codified at 29 U.S.C. § 1132(a)) and conflict or express preemption under § 514 (codified at 29 U.S.C. § 1144(a)). *See Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 275 n.34 (5th Cir. 2004); *Cunningham v. Petroleum Prof'l Int.*, Civ. Action No. 04-2528, 2006 WL 1044153 (W.D. La. Apr. 19, 2006). The former supports federal question jurisdiction, whereas the latter does not. *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 291 (5th Cir. 1999) (*en banc*).

Complete preemption occurs when a federal statute wholly displaces a state law cause of action, and in effect, converts or recasts the state law claim into a federal cause of action. *Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 62-66, 107 S.Ct. 1542 (1987); *Aetna Health, Inc., v. Davila,* 542 U.S. 200, 207-211, 124 S.Ct. 2488 (2004). ERISA's civil enforcement provision is a statute with such preclusive force for any cause of action that falls within its "scope." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (*en banc*).

      **a)     Is There an ERISA Plan?**

The initial inquiry of course, is whether the subject disability policy is an ERISA plan. If not, then ERISA does not apply, and jurisdiction is lacking. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976 (5th Cir. 1991). The Fifth Circuit treats the existence of an ERISA plan as a mixed question of fact and law. " *House v. American United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007) (citation omitted). When, as here, there are no disputed issues of fact, however, the issue is purely a question of law. *Id*.

ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . .

established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . ." certain benefits, "including benefits in the event of sickness, accident, disability . . ." 29 U.S.C. § 1002(1).

To determine whether an employee benefit arrangement constitutes an "employee welfare benefit plan" the court must "ask whether a plan: (1) exists; (2) [does not fall] within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'– establishment or maintenance by an employer intending to benefit employees." *House v. American United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007) (citation omitted). If the court answers any part of the inquiry in the negative, then the "plan" is not an ERISA plan, and the court need not reach the remaining inquiries. *Peace v. American General Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006) (citation omitted).

**(1)**

To determine whether the arrangement is a plan, "a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982). Here, there is little question as to the existence of a plan. *See* Group Policy No. GLTD-AJ4Q issued by Omaha to Monroe Surgical Hospital; M/Dismiss, Exh. A (containing, *inter alia*, monthly benefit provisions, eligibility requirements, claims process, survivor benefits, etc.).

**(2)**

The safe-harbor provision excludes plans "if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer received no profit from the plan." *Meredith, supra*. Here, Monroe Surgical Hospital ("MSH") was the policyholder of the Group Long-Term Disability Insurance policy which provided coverage to MSH's eligible employees. (Group Policy No. GLTD-AJ4Q; M/Dismiss, Exh. A). As the policyholder/employer, MSH had a greater role than simply collecting and forwarding premiums to Omaha. For instance, MSH was required to maintain records to show who was insured and not insured. *Id*. It also had to notify Omaha when insured persons no longer were eligible for coverage. *Id*. Moreover, if MSH failed to provide Omaha with timely notice of the termination of an insured person's coverage, then MSH was liable to Omaha for a late notice in the amount of the covered person's premium, plus the amount of any claims paid on the person's behalf. *Id*. In short, because at least one of the safe-harbor provisions is not met, the plan is not excluded thereby.

**(3)**

Finally, the court must "look to the two primary elements of an ERISA employee welfare benefit plan as defined by the statute: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees." *Meredith*, 980 F.2d at 355 (internal quotation marks omitted). "To determine whether an employer 'established or maintained' an employee benefit plan, 'the court should focus on the employer and its involvement with the administration of the plan.'" *Hansen v.*

8

*Cont'l Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991) (quoting *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1452 (5th Cir. 1991)). "[T]he purchase of a policy or multiple policies covering a class of employees offers substantial evidence that [an ERISA] plan, fund, or program has been established." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 242 (5th Cir. 1990). In this case, MSH established a group policy covering a class of employees that provides them with benefits. In addition, MSH has continued involvement with the administration of the plan. *See* discussion, *supra*.

Upon consideration of the uncontroverted evidence before the court, and in the absence of any argument to the contrary, the undersigned concludes that the subject policy is an ERISA plan.

  b)  Scope of § 502(a)'s Civil Enforcement provision

Having determined that the subject policy is an ERISA plan, the court next must determine whether plaintiff's cause of action falls within the scope of § 502(a)'s civil enforcement provision. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488 (2004).[7] The Supreme Court has framed the inquiry as follows, ". . . if an individual, at some point in time, could have brought his claim under ERISA §§ 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA §§ 502(a)(1)(B)." *Davila*, 542 U.S. at 209, 124 S.Ct.

---

[7] ERISA § 502(a)(1)(B) provides that "[a] civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the Supreme Court explained, "[t]his provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to h[er] under the terms of the plan are not provided, [s]he can bring suit seeking provision of those benefits." *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496.

9

at 2496. A state law claim is not independent of ERISA if interpretation of the plan terms comprises an essential part of the claim and liability exists only because of the administration of the ERISA plan. *Davila*, 542 U.S. at 213, 124 S.Ct. at 2498. In making this assessment, the court must examine the plaintiff's petition, the statute upon which her claims are based, and the various plan documents. *Davila, supra.*

From plaintiff's complaint, the court discerns state law claims for recovery of benefits purportedly due under a group disability plan, plus penalties/punitive damages, and attorney's fees. Plaintiff does not cite statutory or codal authority for her claim to recover unpaid benefits. The omission, however, is of no moment, because whether the claim derives from Louisiana Revised Statute § 22:1821, Civil Code Article 1994 for breach of contract, or some other source, the end result is the same. It is manifest that Downs could have brought her claim for failure to pay benefits under ERISA § 502(a)(1)(B).[8] Furthermore, Omaha's duty to pay benefits does not arise independently of ERISA or the plan terms. Indeed, there is no indication that § 22:1821 or Article 1994 impose any liability upon Omaha so long as Omaha acted in compliance with Plan terms. Thus, consideration and interpretation of plan terms is necessary for a claim for denial of benefits under these state law provisions. As plaintiff's state law claim for denial of benefits is not entirely independent of the federally regulated contract, it necessarily falls within the scope of ERISA § 502(a)(1)(B) and is thereby completely preempted. *Davila, supra*. The court may

---

[8] Neither side disputes that plaintiff is a participant under the Plan. A participant is defined as ". . . any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

exercise subject matter jurisdiction, via federal question, 28 U.S.C. § 1331. *See Arana, supra*.

Omaha contends that complete preemption requires dismissal of plaintiff's state law claims. However, "[a] court presented with a claim that is completely preempted by ERISA has two options: allow the plaintiff to amend the complaint to expressly assert an ERISA claim or simply treat the state-law claim as a claim under ERISA." *Hogan v. Jacobson*, No. 12-0820, 2015 WL 1931845, at *2 (W.D. Ky. Apr. 28, 2015), aff'd, 823 F.3d 872 (6th Cir.2016). In this case, given that complete preemption is providing the jurisdictional foundation for the court's consideration of the instant motion, the undersigned will exercise the latter option, and construe plaintiff's state law claim for breach of contract and request for attorney's fees as a claim under ERISA.[9]

    c)    **Non-ERISA Remedies Preempted**

ERISA's § 502(a)(1)(B) does not authorize penalties/punitive damages. Accordingly, the court will analyze this claim under principles of ordinary or express preemption.

ERISA's express preemption provision, § 514(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan. . . ." 29 U.S.C. § 1144(a) (emphasis added). This provision is purposefully expansive, and is intended to "ensure that employee benefit plan regulation would be exclusively a federal concern." *Davila*, 542 U.S. at 208, 124 S. Ct. at 2495. Thus, any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear

---

[9] ERISA provides for an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g). Further, Omaha appears to argue that, were plaintiff to prevail, she would be unable to recover legal or statutory interest. Pre-judgment interest, however, is available in ERISA cases. *Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir.2016).

congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila, supra*.

It is manifest that plaintiff's claim for punitive damages is conflict-preempted by ERISA. *Hartford Life & Accident Ins. Co. v. Varnado*, No. 16-00015, 2016 WL 2354539, at *3 n.14 (M.D. La. Mar. 24, 2016), R&R adopted, 2016 WL 1746055 (M.D. La. May 2, 2016) (citing *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 32 (5th Cir. 1993)). Moreover, courts consistently have recognized that ERISA preempts a claim for unpaid benefits, penalties, and fees under Louisiana Revised Statute § 22:657 (now § 22:1821).[10] *Ponstein v. HMO Louisiana Inc.*, Civ. Action No. 08-663, 2009 WL 1309737 (E.D. La. May 11, 2009) (and cases cited therein). Indeed, a § 22:657/1821 claim centers upon whether plaintiff had a right to receive benefits under the terms of an ERISA plan, which affects the relationship between traditional ERISA entities. In fact, by its own terms, § 22:1821 defers to ERISA plans: "[t]he provisions of this Paragraph shall not apply to medical benefit plans that are established under and regulated by the Employment Retirement Income Security Act of 1974." La. R.S. § 22:1821(f).

In addition, there is no right to a jury trial in an ERISA denial of benefits case. *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 191 (5th Cir.2012) (citation omitted). Accordingly, plaintiff's jury demand must be stricken. *See Sublett v. Premier Bancorp Self Funded Med. Plan*, 683 F. Supp. 153, 155 (M.D. La.1988) (striking jury demand in ERISA denial of benefits case).

---

[10] Effective January 1, 2009, the Louisiana Legislature amended and reenacted Title 22 of the Louisiana Revised Statutes to re-designate then-existing provisions of Title 22 into a new format and number scheme without changing the substance of the provisions. (Acts 2008, No. 415, § 1).

### III. No Plausible Claim for Attorney Fees under 42 U.S.C. § 1988

Section 1988 provides for an award of reasonable attorney's fees to a prevailing party in an action or proceeding to enforce certain enumerated civil rights laws. *See* 42 U.S.C. § 1988(b). The instant ERISA cause of action is not included in that list. *Id*. Accordingly, plaintiff does not state a plausible or colorable claim for relief under § 1988.

### Conclusion

For the reasons set forth above, the undersigned finds that the subject disability policy is an ERISA plan. Furthermore, plaintiff's cause of action for failure to pay benefits under the plan is completely preempted and recast as a claim under ERISA § 502(a)(1)(B). Any other state law claims or claim for penalties/punitive damages are conflict-preempted by ERISA, and subject to dismissal on that basis. Plaintiff's jury demand will be stricken. Finally, her claim for attorney's fees under 42 U.S.C. § 1988 does not state a plausible claim for relief. Accordingly,

IT IS RECOMMENDED that defendants' motion to dismiss pursuant to Rule 12(b)(6) [doc. # 6] be GRANTED-IN-PART, and that judgment be entered in defendants' favor finding that the subject disability policy is an ERISA plan, that plaintiff's state law claims for unpaid benefits and fees under the plan are completely preempted by ERISA, and therefore, recast as claims under ERISA § 502(a)(1)(B).

IT IS FURTHER RECOMMENDED that any other state law claim, including claims for punitive damages and/or penalties be dismissed, with prejudice, as conflict-preempted.

IT IS FURTHER RECOMMENDED that plaintiff's jury demand be STRICKEN.

IT IS FURTHER RECOMMENDED that plaintiff's claim for fees under 42 U.S.C. § 1988 be DISMISSED, with prejudice.

IT IS FURTHER RECOMMENDED that defendants' motion [doc. # 6] otherwise be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 29th day of December 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE