UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **PATRICIA A. DOWNS** | * | **CIVIL ACTION NO. 17-0888** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **UNITED OF OMAHA LIFE INSURANCE COMPANY, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a petition for benefits under a disability insurance plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* For reasons explained below, it is recommended that the petition be **DENIED**.

### Factual Background

**I.     Disability**

Plaintiff Patricia Downs, born in 1956, was employed as a registered nurse for Monroe Surgical Hospital beginning in 2002. In February 2012, Plaintiff began experiencing left shoulder pain and visited with her primary care doctor. She received steroid injections on two different occasions, without significant relief. An MRI of the shoulder indicated a full thickness rotator cuff tear involving the supraspinatus tendon and showed significant retraction. Dr. Randall Taylor, an orthopedic surgeon, recommended arthroscopic repair surgery. (AR at 481-88).[1]

---

[1] Defendant filed a copy of the administrative record. [doc. # 15]. For ease of review, references to the administrative record are cited as "AR at [page #]," with the page number corresponding to the bates number inserted by Defendant.

On April 9, 2012, Plaintiff underwent a rotator cuff repair, decompression, distal claviculectomy, and a left carpal tunnel release. (AR at 477). Plaintiff went to physical therapy to rehabilitate her shoulder and occupational therapy for recover from the carpal tunnel surgery. (AR at 432-46; 448-64).

At a follow-up visit on June 21, 2012, Dr. Taylor recommended additional physical therapy and wrote a letter stating that Plaintiff should be excused from work until August 10, 2012. (AR at 447, 465-68). On July 2, 2012, Plaintiff's physical therapist, Dan Wood, provided Dr. Taylor with a progress report indicating that Plaintiff would benefit from additional physical therapy services. (AR at 432). On July 12, 2012, Plaintiff had another follow-up visit with Dr. Taylor, and he recommended additional physical therapy. (AR at 292-95). He also completed a Supplemental Physician Statement noting that Plaintiff should do no lifting with her left arm and wrote a letter stating that Plaintiff should be excused from work until October 10, 2012. (AR at 296, 427).

On July 25, 2012, Dan Wood provided Dr. Taylor with another progress report and recommended that Plaintiff continue physical therapy. (AR at 1096). Plaintiff had additional follow-up appointments with Dr. Taylor in August, September, October, and November 2012. (AR at 255-69, 271-75, 278-81, 314-17). On September 6, 2012, Dr. Taylor prescribed additional physical therapy for Plaintiff and wrote a letter stating that Plaintiff should be excused from work until December 10, 2012. (AR at 276-77). On November 20, 2012, Dr. Taylor wrote a letter stating that Plaintiff is under his medical care and will be seen again on May 21, 2013 for a shoulder check-up. He also noted that the Social Security Administration ("SSA") had approved Plaintiff for Social Security Disability Income (SSDI). (AR at 270). Plaintiff had follow-up

2

appointments with Dr. Taylor on March 13 and 27, 2013. She complained of left shoulder pain and received an injection. (AR at 242-51). Plaintiff's last recorded appointment with Dr. Taylor for her shoulder was on July 10, 2013. (AR at 204-08).

Plaintiff continued to experience pain in her left shoulder. Between July 18, 2013 and May 29, 2014, she was treated by Dr. Joseph Walters, an internist, and Renita Bryant, a nurse practitioner, and was prescribed pain medication and given injections. (AR at 736-45, 753-56, 769-71). Plaintiff was also treated for instances of right shoulder pain between October 2012 and January 2015. (AR at 255-64, 656-58, 753-58).

In addition to treatment for her shoulder, Plaintiff underwent a laparoscopic sigmoid colectomy in July of 2011, for which she received short term disability benefits. (AR at 503, 547-50). Between July 2013 and June 2015, Plaintiff also complained of, and received treatment for, hypertension and pain in her cervical spine, left knee, and right ankle. (AR at 204-10, 637-40, 659-62, 731-35, 759-64, 776-77).

**II.    The Policy**

Plaintiff has been covered under Monroe Surgical Hospital's disability plan, effective June 1, 2011. Defendant United of Omaha Life Insurance Company ("Omaha") issued a policy of insurance under the plan, the United of Omaha Life Insurance Company Group Policy No. GLTD-AJ4Q (the "Policy"), which provides long term disability ("LTD") benefits to persons who, *inter alia*, meet the definition of "Disability and Disabled." (AR at 1-57). Under the Policy,

> **Disability and Disabled** mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
>
> > (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and

> (b) unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings due to that same Injury or Sickness.

> After a Monthly Benefit has been paid for 24 months, Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation.

> Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with Your employer.

(AR at 46-47).

> **Gainful Occupation** means an occupation, for which You are reasonably fitted by training, education or experience, is or can be expected to provide You with Current Earnings at least equal to 85% of Basic Monthly Earnings within 12 months of Your return to work.

(AR at 47).

> **Material Duties** means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will We consider working an average of more than 40 hours per week in itself to be a part of material duties. One of the material duties of Your Regular Occupation is the ability to work for an employer on a full-time basis.

(*Id.*)

### III. The Disability Claim

Plaintiff received short term disability benefits from April 9, 2012 through July 8, 2012. (AR at 691). Effective July 9, 2012, she began receiving LTD benefits. (AR at 1239-42). Effective October 2012, SSA awarded her SSDI. (AR at 1039).

On February 5, 2014, Omaha notified Plaintiff that on July 9, 2014 the definition of "Disability" would change under the Policy. To remain eligible to receive benefits, Plaintiff must be unable to perform "all of the Material Duties of any Gainful Occupation." Omaha informed

4

Plaintiff that it would conduct a review of her claim to determine if she met the Policy's definition of "Disability." (AR 966-67).

On February 19, 2015, Omaha denied Plaintiff's claim for LTD benefits. In its denial letter, Omaha relayed that it had reviewed various records related to Plaintiff, including (1) medical records; (2) employment records (3) Plaintiff's short-term disability claim form; (4) a supplemental report of disability completed by Plaintiff and Dr. Walters; (5) an internal medical review performed by Omaha's nurse case manager completed in December 2014; (5) and a transferable skills analysis ("TSA") completed in January 2015. (AR at 680-86).

Dr. Walters completed a physician's statement on February 28, 2014, wherein he noted that Plaintiff was still being treated for shoulder pain, was unable to raise her arm more than 50°, and had achieved maximum medical improvement. Dr. Walters opined that Plaintiff could not "engage in any work related activities." (AR at 959). Omaha followed-up with Dr. Walters in January 2015 asking if it would be reasonable to expect Plaintiff to be able to perform sedentary strength demand work on a full-time basis, but he did not respond. (AR at 683, 694-96).

Omaha's nurse case manager, Julie Grancer, reviewed Plaintiff's medical records and concluded that Plaintiff had the following restrictions and limitations as of December 10, 2014:

- No carrying/lifting/pushing or pulling > 10 pounds
- No overhead reaching with the left arm
- No frequent repetitive left shoulder or left knee movement
- No exposure to large vibratory machinery
- She would require the ability to make routine position change with sitting 6 hours out of an 8-hour day
- No jumping, running, full squatting, crawling, climbing or crouching
- She would require the ability to sit down from a standing position every 1-hour for 5-10 minutes

(AR at 1388-91).

5

Based on the medical documentation, Omaha determined that Plaintiff "would be capable of performing a sedentary occupation as defined by the Department of Labor's definition of work, on a full-time basis." (AR at 683). Accordingly, a TSA was completed by Omaha's vocational rehabilitation consultant using the restrictions and limitations outlined by Nurse Grancer and information Plaintiff provided regarding her education, training, and experience. The consultant was able to identify three transferable occupations that Plaintiff would be qualified to perform in the Monroe, Louisiana area. (AR at 577-80). Based on the foregoing, Omaha concluded that Plaintiff could perform at least one Material Duty of any Gainful Occupation and that no further benefits were payable beyond July 9, 2014.[2] (AR at 684).

Plaintiff appealed the denial of her LTD claim. (AR at 536-38). In connection with the appeal, Omaha reviewed additional documents, including: (1) Plaintiff's medical records through June 8, 2015; (2) Plaintiff's pharmacy records for the period of January 1, 2013 through May 13, 2015; (3) a letter from Dr. Taylor dated June 8, 2015; and (4) a medical record review report completed by an independent physician reviewer, orthopedic surgeon Dr. Neal Small. (AR at 609).

Dr. Small reviewed Plaintiff's records and agreed with the level of functionality recommended by Nurse Grancer. Dr. Small noted that despite Plaintiff's complaints of pain, her diagnostic tests, physical therapy reports, and physician encounters showed objective evidence of a reasonable range of motion and strength in Plaintiff's shoulder. Further, he stated that had Plaintiff's repair not been successful, there would likely have been additional diagnostic testing.

---

[2] In its denial letter, Omaha also informed Plaintiff that the benefits paid to her between July 9, 2014 and February 18, 2015 did not need to be reimbursed. (AR at 684).

Dr. Small also noted that he spoke with Dr. Walters on June 18, 2015, and Dr. Walters stated that he deferred to the orthopedic surgeon with regards to Plaintiff's employment status and workplace functionality. (AR at 557-71).

In a letter dated June 8, 2015, Dr. Taylor instructed that Plaintiff "should perform no lifting with the left arm of greater than 10 pounds during the rest of her lifetime due to the large size of her rotator cuff tendon tear and the risk of recurrent rotator cuff tendon tear." (AR at 645).

On July 9, 2015, following its review of Plaintiff's appeal, Omaha informed Plaintiff that it would uphold the denial of her claim for LTD benefits. Omaha concluded that the medical evidence did not support "restrictions or limitations to preclude a return to work at any gainful occupation" beginning on July 9, 2014. The appeal letter also acknowledged that Plaintiff is currently receiving SSDI but noted that this did not affect its determination regarding her claim. (AR at 608-11).

## Procedural History

Following the exhaustion of her administrative remedies, Plaintiff filed an action for breach of contract against Omaha and Mutual of Omaha Insurance Company, claiming reasonable sums due, punitive damages, attorney's fees, costs, and interest. [doc. # 1]. This court subsequently determined that the Policy is an ERISA plan and that Plaintiff's state law claims for unpaid benefits and fees under the plan are completely preempted by ERISA, and therefore, recast as claims under ERISA § 502(a)(1)(B). The court also dismissed Plaintiff's claims for punitive damages and/or penalties and for fees under 42 U.S.C. § 1988 and ordered that her jury demand be stricken. [docs. # 10, 12].

On June 27, 2018, the parties submitted a joint stipulation

7

> that the relevant ERISA Plan, United of Omaha Life Insurance Company Group Policy No. GLTD-AJ4Q vests United of Omaha with discretionary authority to determine eligibility for benefits and/or construe and interpret the terms of the Plan. Accordingly, the Parties stipulate and agree that the claims decisions made by United of Omaha at issue in this litigation will be reviewed for abuse of discretion under an "arbitrary or capricious" standard of review.

[doc. # 29]. Omaha also filed a copy of the AR, which includes the Policy at issue. [doc. # 15]. Plaintiff disputes the completeness of the AR and has filed additional evidence of her own. [docs. # 25-27]. On June 28, 2018, the undersigned determined that this matter is ripe for a judgment on the administrative record and set a briefing schedule. [doc. # 30]. Plaintiff submitted a brief on August 28, 2018. [doc. # 34]. Defendant submitted its brief on September 25, 2018. [docs. # 35, 36]. On October 30 and November 7, 2018, Plaintiff filed supplemental briefs. [docs. # 44, 47]. [3]

## Standard of Review

"ERISA and its regulations contemplate a system in which the administrator makes a decision as to whether to grant or deny benefits based on the factual scenario and based on its interpretation of the relevant plan provisions." *Schadler v. Anthem Life Ins. Co*., 147 F.3d 388, 395 (5th Cir. 1998). The statute "was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" *Id.* at 393 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)). To achieve these goals, ERISA "sets certain minimum requirements for procedures and notification when a plan

---

[3] Although Defendant stylized its submission as a motion for judgment on the administrative record, [docs. # 35, 36], the court construes the motion and supporting memorandum as its brief on the merits, in accordance with the ERISA Briefing Order, [doc. # 30]. Likewise, the court construes Plaintiff's memoranda in opposition to Defendant's motion for judgment on the administrative record, [docs. # 44, 47], as reply briefs.

administrator denies a claim for benefits." *Id.* (citations omitted). Specifically, ERISA requires every employee benefit plan to

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

A claimant who has been denied benefits may bring suit in federal court "to recover benefits due to him under the terms of his plan." *Id.* § 1132(a)(1)(B). The denial of benefits "under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. When the plan administrator is vested with discretionary authority to construe and interpret the terms of the plan, courts review the denial of benefits for abuse of discretion. *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651-52 (5th Cir. 2009). Here, the parties stipulated that the relevant ERISA plan vests Omaha with "discretionary authority to determine eligibility for benefits and/or construe and interpret the terms of the Plan." [doc. # 29]. Accordingly, the court reviews Omaha's denial of benefits for abuse of discretion.

In the ERISA context, abuse of discretion is synonymous with arbitrary and capricious. *Cooper*, 592 F.3d at 652. Under the arbitrary and capricious standard of review, courts

> affirm an administrator's decision if it is supported by substantial evidence. Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a

9

> conclusion. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.

*Id.* (citations and internal quotation marks omitted). The court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009).

In reviewing an administrator's decision, the court takes into account case-specific factors. *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)). These factors are "weighed together before determining whether a plan administrator abused its discretion in denying benefits." *Id.* Where, as here, the plan administrator insures the plan and determines benefit eligibility, a conflict of interest exists, and the court weighs the conflict of interest as "one factor among many." *Holland*, 576 F.3d at 247-48 (citations omitted). A conflict of interest should be given more weight when circumstances suggest "a higher likelihood that it affected the benefits decision" or "procedural unreasonableness." *Glenn*, 554 U.S. at 117-18. A conflict of interest should be given minimal weight when the administrator "has taken active steps to reduce potential bias and to promote accuracy," *id.* at 117, or the claimant produces no evidence of the degree of the conflict. *McDonald v. Hartford Life Grp. Ins. Co.*, 361 F. App'x 599, 608 (5th Cir. 2010) (citing *Holland*, 576 F.3d at 249).

## **Discussion**

Plaintiff claims that she is entitled to disability benefits under the Policy because (1) she meets the SSA's definition of disability; (2) every physician who has examined her "has

concluded that she is disabled from performing the duties of her regular occupation, with the exception of the handpicked doctor of [Omaha], who did not perform a true evaluation"; and (3) Omaha arbitrarily and capriciously denied her benefits by ignoring the statement of her treating physician and failing to consider her full medical history. [doc. # 34 at 6-8]. Plaintiff also claims that Omaha "developed a pattern of arbitrarily of ignoring the opinions of the physicians that actually examined her" and "has a structural conflict of interest because it has the discretionary authority to determine eligibility for benefits and the obligation to pay benefits." (*Id.* at 8).

Omaha responds that its decision to deny Plaintiff benefits "is supported by substantial and concrete evidence." [doc. # 36 at 15]. Specifically, Omaha relied on the reviews conducted by Nurse Grancer and Dr. Small, as well as the TSA, which considered the limitations and restrictions provided by Plaintiff's physicians, Dr. Taylor and Dr. Walters. (*Id.* at 15-16). Further, Omaha claims it did not disregard the SSA's determination by not continuing LTD benefits, but it is not bound by the SSA's disability determination. (*Id.* at 14-15). Moreover, Omaha claims that its decision to deny benefits in 2015 is not inconsistent with the SSA's decision to approve benefits in 2012; Omaha continued to monitor Plaintiff's medical condition, while there is no evidence that the SSA did the same. (*Id.*) Finally, Omaha notes that Plaintiff has asserted no claims against Mutual of Omaha Insurance Company and therefore, Plaintiff's suit against Mutual of Omaha Insurance Company should be dismissed with prejudice. (*Id.* at 16).

Upon review of the record, the undersigned finds that Plaintiff has failed to show that Omaha's decision to terminate her LTD benefits was arbitrary and capricious. Although Plaintiff is correct that Omaha relied on the opinions and reports of persons who did not personally evaluate Plaintiff, Omaha did not disregard Plaintiff's treating physicians. Rather, the record

11

demonstrates that Omaha considered the statements of Dr. Walters and Dr. Taylor as part of its broader review.

Specifically, in February of 2014, Dr. Walters, Plaintiff's treating physician, opined that Plaintiff could not engage in any work related activity. (AR at 959). However, when questioned about Plaintiff's ability to perform sedentary work, Dr. Walters ultimately deferred to Plaintiff's orthopedic surgeon. (AR at 566). As of June 8, 2015, the only restriction Plaintiff's orthopedic surgeon provided was that she should not lift with her left arm anything greater than ten pounds. (AR at 645).

Further, records from Plaintiff's physical therapist indicate that her range of motion increased and reported levels of pain decreased in the months following her surgery. (AR at 1157-87). Overall, the physical therapy records and Plaintiff's other medical records, which Nurse Grancer and Dr. Small relied on in preparing their reports, supported a finding that Plaintiff had achieved a reasonable range of motion and strength. Nurse Grancer and Dr. Small also considered Plaintiff's self-report of her abilities and impairments in making their recommendations as to Plaintiff's restrictions and limitations. (AR at 565-66, AR 1388-91).

Omaha also considered Plaintiff's other medical issues, as reflected in its denial letters and in Dr. Small's report. (AR at 562-65, 682). Omaha acknowledged that Plaintiff's physical impairments restricted and limited the work she could perform. However, Omaha concluded that while she may be unable to perform the material duties of her regular occupation, she was not precluded from returning to work at any gainful occupation. (AR at 682-84, 610).

Additionally, despite Plaintiff's contentions, Omaha took into account that Plaintiff was receiving SSDI as of October 2012. (AR at 684, 610). In its February 19, 2015 letter, Omaha

12

acknowledged that Plaintiff had been approved for benefits through the SSA but stated that the "law governing the award of Social Security Disability benefits contains several provisions not applicable to" claims under the Policy. (AR at 684). In its July 9, 2015 letter, Omaha stated that its "determination is based on more recent documentation that was received after the Social Security benefit award" and that "eligibility requirements for Social Security Disability may differ from the eligibility requirements under this policy." (AR at 610). Plaintiff claims she meets the SSA definition if disability, [doc. # 34 at 6], but the definition of "Disability" under the Policy is different than the SSA's definition. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months"). "[B]ecause the eligibility criteria for SSA disability benefits differs from that of ERISA plans, while an ERISA plan administrator should consider a SSA determination, it is not bound by it. *Hamilton v. Standard Ins. Co.*, 404 F. App'x 895, 898 (5th Cir. 2010); *see Schexnayder*, 600 F.3d at 471 n.3 (noting that a plan administrator is not required "to give any particular weight to the contrary findings" of the SSA). Here, Omaha acknowledged but ultimately discounted the SSA award based on the medical evidence before it.

Based on the foregoing, Omaha's decision to terminate Plaintiff's LTD benefits is supported by substantial evidence. Omaha reviewed Plaintiff's records and determined that she suffered physical impairments but could still perform sedentary work. Omaha then found suitable employment options that accommodated Plaintiff's restrictions and limitations. Accordingly, the undersigned finds that Omaha did not act arbitrarily and capriciously in denying Plaintiff's benefits.

The parties admit that Omaha's dual role of administrator and insurer creates a structural conflict of interest. [docs. # 34 at 8, 36 at 13]. However, the undersigned finds that the conflict of interest should be given minimal weight. Although a benefit decision favorable to Plaintiff arguably impacts Omaha's bottom line, Plaintiff has not demonstrated a specific bias or any procedural unreasonableness. Plaintiff simply asserts that the conflict exists but has offered no evidence as to the degree of the conflict. [*see* doc. # 34 at 8]. As discussed above, other factors weigh in favor of Omaha's decision to deny Plaintiff benefits.

In conducting a review of whether a plan administrator abused its discretion, courts are limited to examining the evidence in the administrative record that was before the administrator when the benefits determination was made. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 314 (5th Cir. 2007). The court may stray from the administrative record in limited circumstances—when the evidence relates to how an administrator interprets the plan or will aid in explaining the medical terminology and procedures outlined in a claim. *Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 & n.5 (5th Cir. 2001). Plaintiff submitted the following additional documents to supplement the administrative record: (1) a job description of her position; (2) medical records from 2016, 2017, and 2018; and (3) a separation notice from Monroe Surgical Hospital. [docs. # 25-27]. These documents do not meet the limited exceptions, and consequently, the court does not consider them in its review.

Finally, as Omaha notes, Plaintiff has asserted no claim against Mutual of Omaha Insurance Company. Accordingly, any claim against Mutual of Omaha Insurance Company should be **DISMISSED**.

## Conclusion

14

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's petition for long-term disability benefits [doc. # 1] be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that to the extent Plaintiff asserts a claim against Mutual of Omaha Insurance Company, that claim be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**
Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 17th day of December 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE